IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

MARWAN MAHAJNI,

   Plaintiff,

              Case No: 24-CV-416

v.

MILWAUKEE COUNTY,
DEPUTY VU DO, in his individual capacity,
DEPUTY SCOTT WOIDA, in his individual capacity,
DAVID CLARKE, in his individual and official
capacity, JOHN DOE DEFENDANTS 1 - 5, and
ABC INSURANCE COMPANY,

   Defendants.

---

**DEFENDANTS MILWAUKEE COUNTY, DEPUTY VU DO, DEPUTY SCOTT WOIDA, AND DAVID CLARKE'S BRIEF IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Defendants Milwaukee County, Deputy Vu Do, Deputy Scott Woida, and David Clarke, by their attorneys, Crivello, Nichols & Hall, S.C., respectfully submit this brief in support of their Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## PROCEDURAL BACKGROUND

On April 6, 2024, Plaintiff filed the operative complaint alleging the following claims:

(1)  Denial of right to a fair trial in violation of the Sixth and Fourteenth Amendments against all defendants;

(2)   Denial of due process in violation of the Fourteenth Amendment against all defendants;

(3)   A state law claim for failure to intervene against Deputy Woida and John Doe defendants;

(4)   *Monell* liability against Milwaukee County and former Sheriff Clarke;

(5)   Cruel and unusual punishment in violation of the Fourth and Fourteenth Amendments against Deputy Do and Deputy Woida;

(6)   Negligent infliction of emotional distress against Deputy Do and Deputy Woida;

(7)   Intentional infliction of emotional distress against Deputy Do and Deputy Woida;

(8)   Negligent hiring, training, and supervision against Milwaukee County;

(9)   State law indemnification against Milwaukee County; and

(10)  Direct action against ABC Insurance.

(See Dkt. 1, p. 1-23). Plaintiff's claims stem from the conviction of two serious felonies: kidnapping and second degree child sexual assault. (*Id*. at ¶ 40). Plaintiff was sentenced for those convictions, (*id*. at ¶ 77), but the convictions were subsequently vacated on March 11, 2020, (Dkt. 16-3). Plaintiff incorporated two exhibits to the complaint: a June 27, 2019, decision from Appeal No. 2017AP1184-CR, and a December 5, 2023, letter Attorney Motely enclosing a purported "Notice of Claim to: Milwaukee County, Wisconsin." (Dkt. 1-1 and 1-2).

Defendants answered on June 28, 2024, denying liability and asserting various affirmative defenses including that former Sheriff Clarke, Deputy Do, and Deputy Woida are entitled to both absolute and qualified immunity. (Dkt. 16). Defendants

also asserted that Plaintiff failed to comply with Wis. Stat. § 893.80 and that Plaintiff's claims may be barred by the applicable statute of limitations. (*Id*. at p. 39). Similar to Plaintiff, Defendants incorporated three exhibits to their answer: (1) a May 12, 2017, decision and order denying Plaintiff's motion for a new trial; (2) a June 6, 2017, decision and order denying Plaintiff's motion for reconsideration, and (3) a March 11, 2020, order vacating Plaintiff's convictions and granting a new trial. (Dkt. 16-1, 16-2, 16-3).

## ARGUMENT

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows "a party to move for judgment after the parties have filed the complaint and answer." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). Akin to Rule 12(b), judgment on the pleadings is appropriate if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northen Indiana Gun*, 163 F.3d at 452 (citing *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). While courts must "view the facts in the complaint in the light most favorable to the nonmoving party," courts are "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id*. (citing *GATX Leasing*

*Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995); *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).

For purposes of motions for judgment on the pleadings, Courts may consider the complaint, the answer, and any attachments to those documents. *Id.* (citing *Warzon v. Drew*, 60 F.3d 1234, 1237 (7th Cir. 1995)).

## II.    ALL OF PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

The law concerning the statute of limitations is well-settled and is determined by looking at a state's law. *Owens v. Okure*, 488 U.S. 235 (1989). Here, pursuant to Wisconsin law, and for a constitutional claim that accrued on or after April 5, 2018, the applicable statute of limitations is three years. Wis. Stat. § 893.53. "While state law determines the length of the limitations period, federal law determines the date of accrual of the cause of action." *Logan v. Wilkins*, 644 F.3d 577, 581–82 (7th Cir. 2011). "The clock for each individual act starts to tick on the day that the act occurred." *Laslie v Cicero*, Case No., 2021 WL 1853250, *8 (N.D. Ill. May 10, 2021) (quotation omitted).

> The statute of limitations for a § 1983 claim "begins to run when a reasonable plaintiff knew or should have known of facts that would support a charge of discrimination."  "[T]he proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act became painful."

*La Playita Cicero, Inc. v. Town of Cicero*, 2014 WL 944859, *5 (N.D. Ill. March 11, 2014) (citations omitted).  A § 1983 claim accrues "when the plaintiff has a 'complete and present cause of action,' . . . that is, when 'the plaintiff can file suit and obtain relief[.]'" *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091 (2007)(citations omitted).

"[A] cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product."

*Henley v. C.R. Bard, Inc.*, Case No., 2019 WL 6529433, *3 (E.D. Wis. Dec. 4, 2019) (citing *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 411, 388 N.W.2d 140 (1986)). Specific to alleged wrongful convictions, a § 1983 cause of action for damages stemming from such a conviction accrues when "the conviction or sentence has been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). Similarly, in Wisconsin the statute of limitations for both negligent acts and intentional torts is three years. Wis. Stat. §§ 893.54, 893.57

Here, the underlying convictions Plaintiff complains of were vacated on March 11, 2020, (Dkt. 16-3), meaning Plaintiff had until March 11, 2023, to timely file any Section 1983 constitutional challenge, any claim for damages stemming from alleged negligence, or any claim stemming from alleged intentional tort, related to the convictions. Plaintiff failed to meet the deadline, and instead filed suit on April 6, 2024, (see Dkt. 1); 392 days too late. The statute of limitations bars each of Plaintiff's claims, and this Court must dismiss the case in its entirety.

## III. ALTERNATIVELY, PLAINTIFF'S INDIVIDUAL CLAIMS FAIL FOR VARIOUS REASONS.

Even if this Court concludes that Plaintiff's untimely claims can survive, Deputy Do and Woida are entitled to immunity, Plaintiff failed to comply with notice requirements, Plaintiff failed to properly state a *Monell* claim, and former Sheriff

Clarke is not a proper party to this action. Thus, Plaintiff's claims still fail and the Court should dismiss the same.

### a. Deputy Woida is entitled to absolute immunity.

While ordinarily qualified immunity is sufficient to protect the actions of law enforcement officers while acting in the course of duty, absolute immunity can apply in certain cases. *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) (citing *Malley v. Briggs,* 475 U.S. 335, 340–41 (1986); *Pierson v. Ray,* 386 U.S. 547, 557 (1967)). Judges are "entitled to absolute immunity from damages for their judicial conduct," but "[a]bsolute judicial immunity 'is not limited to government officials with the title of ... judge." *Id.* (citing *Mireles v. Waco,* 502 U.S. 9, 11–12 (1991); *Forrester v. White,* 484 U.S. 219, 225–29 (1988)); *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (quoting *Wilson v. Kelkhoff,* 86 F.3d 1438, 1443 (7th Cir. 1996)).

Absolute immunity has been "extended to apply to 'quasi-judicial conduct' of '[n]on-judicial officials whose official duties have an integral relationship with the judicial process." *Richman*, 270 F.3d at 435 (quoting *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238 (7th Cir.1986)). Absolute immunity for acts by nonjudicial government officers is determined on the basis of "a functional approach" (*i.e.,* whether the act has a discretionary function equivalent to a judge). *Dawson*, 419 F.3d at 662 (internal citations omitted); see also *Richman*, 270 F.3d at 435. Absolute immunity has also been extended to apply to administrative functions that "have been undertaken pursuant to the explicit direction of a judicial officer." *Richman*, 270 F.3d at 435. (internal citations omitted). "The policy justifying an extension of

absolute immunity in these circumstances is to prevent court personnel and other officials from becoming a lightning rod for harassing litigation aimed at the court." *Id.* (internal quotations omitted). Justification for extending absolute immunity to court personnel "is most compelling when the lawsuit challenges conduct specifically directed by the judge, and not simply the manner in which the judge's directive was carried out." *Id.* (referencing, *e.g.*, *Kincaid v. Vail,* 969 F.2d 594, 601 (quasi-judicial immunity was provided to a clerk who refused to accept filing of complaint at the direction of the judge); *Dellenbach v. Letsinger,* 889 F.2d 755, 763 (7th Cir.1989) (when a judge requested plaintiff pay for certain (unnecessary) transcripts, court personnel who told plaintiff to do so were entitled to quasi-judicial immunity); *Eades v. Sterlinske,* 810 F.2d 723, 726 (7th Cir.1987) (court personnel who prepared and filed a false certificate at the direction of the judge were entitled to quasi-judicial immunity)).

Here, Plaintiff has alleged that Deputy Do[1] and Deputy Woida took the following oath:

> Do you solemnly swear or affirm under penalty of law that you will keep this jury together as ordered, that you will not permit any person to speak to them, and that you will not speak to them yourself unless by order of the court.

(Dkt. 1, ¶ 26). Even assuming this allegation to be true, the allegations in the complaint show that Deputy Woida followed the judges' order – there is no allegation that Deputy Woida spoke to any juror. (See generally, *id.*). As Plaintiff alleges,

---

[1] Deputy Do is not currently seeking dismissal based on absolute immunity and instead seeks dismissal based on other defenses. However, should claims against Deputy Do survive this motion, Deputy Do reserves the right to seek dismissal based on absolute immunity at the summary judgment stage of this case.

Deputy Woida "did nothing to stop Do," (*id*. at ¶ 36), but there was nothing Deputy Woida could have done besides going against the Court's order and speaking to jurors himself. Deputy Woida is entitled to absolute immunity on the failure to intervene claim. *Richman*, 270 F.3d at 435; see also *Martin v. Hendren*, 127 F.2d 720, 721 (8th Cir. 1997) ("Bailiffs enjoy absolute quasi-judicial immunity for actions specifically ordered by the trial judge and related to the judicial function.").

### b. Deputy Do and Deputy Woida are entitled to qualified immunity.

The United States Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Courts have explained that "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to allow for reasonable errors "because officials should not err always on the side of caution [for the] fear of being sued." *Humphrey v. Staszek*, 148 F.3d 719, 727 (7th Cir. 1998). The qualified immunity defense "erects a substantial barrier for plaintiffs, and appropriately so because qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who knowingly violate the law." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994).

Under the qualified immunity doctrine, "government officials performing discretionary functions are immune from suit if their conduct 'could reasonably have

been thought consistent with the rights they are alleged to have violated.'" *Borello v. Allison*, 446 F.3d 742, 746 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). An official is entitled to immunity if, when he acted, "he reasonably could have believed that his action did not violate a clearly established law." *Cham v. Wodnick*, 123 F.3d 1005, 1008 (7th Cir. 1997), cert denied, 522 U.S. 1117 (1998). Furthermore, "as the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Seventh Circuit instructs that "[a]lthough the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." *Mannola v. Farrow*, 476 F.3d 453, 357 (7th Cir. 2007).

In *City and County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765 (2015), the Supreme Court criticized the Ninth Circuit for misreading prior Supreme Court precedent regarding qualified immunity. Specifically, the Court criticized the Ninth Circuit for defining the right in question—there, the Fourth Amendment right to be free from unreasonable searches and seizures—at too high a level of generality:

> [N]othing in our cases suggests the constitutional rule applied by the Ninth Circuit. The Ninth Circuit focused on *Graham v. Conner*, but *Graham* holds only that the "objective reasonableness" test applies to excessive-force claims under the Fourth Amendment. That is far too general a proposition to control this case. "We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." Qualified immunity is no immunity at all if "clearly established" law can simply be defined as the right to be free from unreasonable searches and seizures.

135 S. Ct. at 1775–76 (internal citations omitted). The Supreme Court repeated this admonition to lower courts again in 2015. *See Mullenix v. Luna*, 136 S. Ct. 305, 308

(2015) (per curiam) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). As the Court framed the issue in *Mullenix*:

> The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

136 S. Ct. at 308 (internal quotations and citations omitted) (emphasis in original).

Even if the contours of the federal right in question are found to have been clearly delineated at the relevant time, a public official may still enjoy qualified immunity if it was objectively reasonable for the official to believe that his or her actions did not violate a federal right. In fact, public officials are shielded from suit even where officials "of reasonable competence could disagree" that such acts were objectively reasonable. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, "if officers of reasonable competence could disagree . . . immunity should be recognized." *Id.*

In determining whether the officers are entitled to qualified immunity, the trial court conducts a two-step inquiry. First, this Court must determine whether the disputed conduct violated a constitutional right. *Borello*, 446 F.3d at 746. Second, this Court must determine whether the right was "clearly established" at the time of the alleged conduct. *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Whether the law was "clearly established" turns on the "objective legal reasonableness of the action" given the contemporaneous legal rules. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Thus, a defendant government official is entitled to qualified immunity for

unconstitutional conduct so long as there could be a reasonable, albeit mistaken, belief about the legality of his or her conduct. *Saucier v. Katz*, 533 U.S. 194, 205-06 (2001).

Here, even if Plaintiff could establish (as alleged in the Complaint) that there was some violation of his constitutional rights, these rights were not clearly established at the time of the alleged conduct. "It is insufficient for a plaintiff simply to point out a recognized constitutional right and claim that the right has been violated." *Borello*, 446 F.3d at 750 (citing *Brosseau v. Haugen*, 543 U.S. 194 (2004)). The Supreme Court instructs that the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The inquiry is narrow and assesses whether the right was "sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Saucier*, 533 U.S. at 201; *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987) ("[T]he test for immunity [is] whether the law was clear in relation to the specific facts confronting the public official when he acted."). Thus, the question of whether immunity attaches is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). If qualified immunity applies to an officer's conduct, "the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The law in this instance was not clearly established at the time of the alleged conduct. No case law has set a precedent or clarified the law concerning conduct similar to the alleged actions of Deputy Do and Woida. Consequently, any reasonable

officer in a similar situation would not understand their actions as violating a clearly established right.

In at least one similar case, the Eighth Circuit held that a bailiff did not violate Plaintiff's constitutional rights by answering a question posed by jurors regarding a potential deadlock. In *Boykin v. Leapley,* Plaintiff argued he was entitled to a new trial because during jury deliberations there was allegedly a conversation between a bailiff and one of the jurors when a juror asked the bailiff what would happen if the jury became deadlocked. 28 F.3d 788, 790 (8th Cir. 1994). The bailiff in *Boykin* testified she answered the jurors' question by saying:

> Well, if you can't come back in with a decision, the Judge and the attorneys talk it over on how long you have been deliberating, then it's up to them whether to send you back into the jury room and say deliberate some more or they are going to take your answer as whatever you give for an answer… I don't know when you are going to come in with a decision. My guess is that if you're telling me that you're going to come in after lunch and say you can't make a decision, I think that the Judge would probably send you back into the jury room, you know, and try to talk some more and try to come to a decision.

The court ultimately concluded that neither statement made by the bailiff was prejudicial. The content of the improper communication and the context in which it was given are relevant to a determination of whether the communication was prejudicial. *Boykin*, 28 F.3d at 788 (citing *United States v. Rowley*, 975 F.2d 1357 (8th Cir.1992) (juror who said he knew defendant and witnesses spoke with other jurors about the case before the jury began to deliberate). The Court concluded by reasoning, "we cannot say that a different result is required in this case because one

juror overheard the bailiff say to another juror that she thought the judge would give such an instruction." *Id.* Plaintiff's claim for a new trial was denied.

While Boykin's case was premised on a petition for *writ of habeas corpus* (after unsuccessfully appealing his conviction through the state courts), *id.* at 789, the facts of *Boykin* are strikingly similar to the allegations in this case: both include bailiffs who allegedly answered questions posed by a seemingly deadlocked jury which resulted in conviction. As demonstrated by the *Boykin* court, the law surrounding what bailiffs may or may not be able to communicate to jurors was not clearly established, and Deputy Do and Woida are entitled to qualified immunity.

**c.    Plaintiff failed to comply with the notice requirements of Wis. Stat. § 893.80(1d).**

Alternatively, this Court must dismiss Plaintiff's state law claims as Plaintiff failed to comply with Wis. Stat. § 893.80(1d). A notice of claim statute, like a notice of injury statute, "is not a statute of limitation but imposes a condition precedent to the right to maintain an action." *Mannino v. Davenport*, 99 Wis.2d 602, 614, 299 N.W.2d 823 (1981). It is the burden of the claimant to show compliance with the notice requirements. *See Weiss v. Milwaukee*, 79 Wis. 2d 213, 255 N.W.2d 496 (1977).

Under Wis. Stat. § 893.80(1d)(a), no action may be brought or maintained against a governmental agency or official unless, "[w]ithin 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent, or attorney is served" on the governmental agency or official. Wis. Stat. § 893.80(1d)(a). In addition to having to serve a written notice of circumstances to the governmental agency, Wis. Stat. § 893.80(1d)(b) also

requires an individual to provide a written notice of claim to the governmental agency, "containing the address of the claimant and an itemized statement of the relief sought," ***before*** the individual may bring a lawsuit against the governmental agency or its officials, employees, or agents for acts done in their official capacity or in the course of the agency or employment with the governmental agency. Wis. Stat. § 893.80(1d)(b).

If a claimant fails to serve the requisite written notice of circumstances within 120 days of the happening of the event, the claimant may still be allowed to proceed if he can prove that: (1) the governmental entity had "actual notice of the claim" prior to filing suit; ***and*** (2) the governmental entity was not prejudiced by his failure to give timely written notice. *See* Wis. Stat. § 893.80(1d)(a); *Clark v. League of Wisconsin Municipalities Mut. Ins. Co.*, 2021 WI App 21, ¶ 13-14, 397 Wis.2d 220, 959 N.W.2d 648. This actual notice must be "'of the ***claim***,' rather than of the mere 'circumstances' that may later give rise to a claim." *Clark*, 2021 WI App ¶ 14 (emphasis in original). And while this "actual notice" of the claim is not subject to the 120 day time limit applicable to formal written notice under § 893.80(1d)(a), it must still be supplied or otherwise exist ***before*** the claimant may file suit. This is because the statutory notice requirements are a "condition precedent" to filing suit. *Rouse v. Theda Clark Med. Ctr., Inc.*, 2007 WI 87, ¶ 19, 302 Wis. 2d 358, 735 N.W.2d 30.

For purposes of § 893.80(1d), "'actual notice' . . . 'is the equivalent of actual knowledge.'" *Markweise v. Peck Foods Corp.*, 205 Wis. 2d 208, 220 (Ct. App. 1996) (internal citations omitted). Regarding the "actual notice" component of the exception

to § 893.80(1d)'s notice requirements, "the actual notice necessary to effectuate substantial compliance [or lack thereof] is 'of the ***claim***[,]'" not merely notice of the circumstances of the events giving rise to the claim. *Id.* at ¶ 20 (emphasis in original). Under § 893.80(1d)(b), notice of the claim includes "an itemized statement of the relief sought . . . ." Accordingly, for the exception to the statutory notice requirements based on actual notice of claim to apply—in addition to establishing the absence of prejudice—Plaintiff must show that the County "not only ha[d] knowledge about the events for which it may be liable, but also the identity and type of damage alleged to have been suffered by [him]" prior to the filing of this lawsuit. *Markweise*, 205 Wis. 2d at 220. Without the County's actual notice of the claim and damages sought, "the investigation and evaluation of envisioned by [§ 893.80(1d) is impossible." *Id.* at 221.

Here, Plaintiff failed to serve the County with a written notice of the circumstances of the claim within 120 days after the alleged events giving rise to the claim. Even assuming the alleged events giving rise to any claim lasted through the State's dismissal of the underlying criminal matter, Plaintiff failed to send any notice of claim to the County for over one year. (Compare Dkt. 1, ¶ 97 ("On October 24, 2022, . . . the court dismissed all of the criminal charges against Mahajni with prejudice") and Dkt. 1-2 (letter dated December 5, 2023)). Thus, the only way Plaintiff can proceed with claims against the County is if he can establish: (1) the County had "actual notice of the claim" prior to filing suit; and (2) the County was not prejudiced by Plaintiff's failure to give timely written notice. See Wis. Stat. § 893.80(1d)(a); *Clark*, 2021 WI App 21 at ¶ 13-14.

Beyond a cover letter stating that Plaintiff is "providing notice of state law claims . . .," (Dkt. 1-2, p. 1), the only mention of any claim in Plaintiff's "Notice of Claim" is as follows:

> Upon information and believe, Deputy Vu in violation of the Sixth and Fourteenth Amendments of the Constitution [*sic*].

(*Id.* at p. 3). There is no mention whatsoever of a potential claim for failure to intervene, for negligent infliction of emotional distress, for intentional infliction of emotional distress, or for negligent hiring, training, and supervision. (See generally, *id.*).

Put simply, Plaintiff failed to provide the County with adequate notice of any actual state claim for which he now seeks relief. Although the "Notice of Claim" arguably included notice of the circumstances of the events giving rise to the newly identified claims, the claims themselves were never noticed, in violation of Wis. Stat. § 893.80(1d). Thus, this Court should grant judgment on the pleadings in Defendants' favor for each of Plaintiff's state claims.

### d.    Plaintiff's *Monell* claim fails on its face.

A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, [the court should] accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v.*

*City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (*quoting Iqbal,* 129 S.Ct. at 1951). In other words, the Supreme Court explained that any legal conclusions must be supported by factual allegations in the complaint.

Therefore, to survive a motion to dismiss, a plaintiff must plead in the complaint "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1951 (*citing Twombly*, 550 U.S. at 556). "The degree of specificity required [of the factual allegations] is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (*quoting Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

Put simply, Plaintiff fails to satisfy the *Twombly-Iqbal* standard applicable to *Monell* claims. Although the Supreme Court has held that municipalities are susceptible to liability under § 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), strict constraints limit the liability of the County of Lafayette for the unconstitutional acts of its employees or others under § 1983. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Under *Monell*, municipal liability exists only "when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

A municipality can violate § 1983 (1) through an express policy, statement, ordinance, or regulation that, when enforced, causes a constitutional deprivation; (2)

through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

As the Supreme Court has explained: "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the [omission in the policy] and the [federal rights] deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985); *see also Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005) ("the claim requires more evidence than a single incident to establish liability") (citing *Tuttle*, 471 U.S. at 822-23); *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997) (rejecting *Monell* claim based on absence of more thorough screening of candidates for sheriff's deputy).

Here, contrary to *Twombly-Iqbal*, the allegations in Plaintiff's *Monell* claim are vague, general, non-specific and threadbare conclusory allegations the factual allegations against Deputy Do and Deputy Woida are that (1) they were sworn bailiffs during Plaintiff's underlying criminal trial; (2) a juror asked Deputy Do "whether or not the jurors could be or deadlocked on any of the counts"; (3) Deputy Do "told the jurors that they all had to agree on guilty or not guilty and that they were not allowed to be hung or deadlocked"; and (4) Deputy Woida knew what Deputy Do said and did not interfere. (Dkt. 1 at ¶¶ 25, 31, 34, 36). Plaintiff's municipal liability claim is

wholly deficient. Although Plaintiff's claim states the bare-boned standard of *Monell*, the complaint references no "express policy" under the first type of *Monell* liability. Nor does Plaintiff allege a person with "final decision policymaking authority" caused injury. Nor does Plaintiff allege any "custom and policy" violated federal rights. (See generally Dkt. 1).

Moreover, the incident alleged is the sort of "single incident" the Supreme Court and Seventh Circuit have held are insufficient for purposes of maintaining a *Monell* claim. The allegations involving Plaintiff are, on the face of the Complaint, entirely isolated. Because Plaintiff's *Monell* claim is entirely lacking the necessary factual matter to state a claim for municipal liability, this Court should dismiss the claim.

Furthermore, there is no plausible allegation that the alleged constitutional violation was caused by an unconstitutional custom, policy or practice. Plaintiff has failed to allege that any County employee previously acted in any manner even remotely similar to the allegations made in this case. (See generally, Dkt. 1). The alleged failure to investigate the complained-of conduct after the fact means nothing in terms of *Monell*; rather, a *Monell* claim must be based on **prior** incidents where no action was taken, and that lack of action caused the instant conduct to occur. *Sornberger v. City of Knoxville, Ill.* 434 F.3d 1006, 1029-1030 (in order to show *Monell* liability based on alleged deliberate indifference, the Plaintiff must allege "either (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure

to act in response to repeated complaints of constitutional violations by its officers."). Plaintiff has made no such allegation and has not sufficiently stated a claim.

Plaintiff has patently failed to state claim under *Monell* as there is no plausible allegation of (1) an express policy, statement, ordinance, or regulation that, when enforced, causes a constitutional deprivation; (2) a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) a constitutional injury caused by a person with "final decision policymaking authority." See *McTigue*, 60 F.3d at 382 (7th Cir. 1995). This Court must dismiss Plaintiff's *Monell* claim.

### e. David Clarke is not a proper party.

At the very least, this Court must dismiss each claim against former Sheriff Clarke as he is not a proper party. Plaintiff's claims against former Sheriff Clarke are limited to: Count 1 – denial of right to a fair trial in violation of the Sixth and Fourteenth Amendments; Count 2 – denial of due process in violation of the Fourteenth Amendment; and Count 4 – *Monell* liability. (Dkt. 1). As to Counts 1 and 2, former Sheriff Clarke has no personal involvement in the alleged conduct and therefore cannot be held liable for same; as to Count 4, former Sheriff Clarke is not the current policymaker of the Milwaukee County Sheriff's Department thus is improperly named as a defendant.

### i. Plaintiff has not alleged any personal involvement on behalf of former Sheriff Clarke relating to Counts 1 or 2.

The Seventh Circuit has "long held that liability under § 1983 must be predicated upon personal responsibility." *Brownlow v. Van Natta*, 2 F. App'x 516,

518–19 (7th Cir. 2001) (citing *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)); see also *Iqbal*, 556 U.S. at 676; *Twombly*, 550 U.S. at 555.. To that end, "the Seventh Circuit established in *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971) that before liability will attach under § 1983, a plaintiff must demonstrate the defendant's direct personal involvement in the claimed deprivation of constitutional rights." *Franklin v. Israel*, 558 F. Supp. 712, 715 (W.D. Wis. 1983) (emphasis added) (citing as *see also Stringer v. Rowe*, 616 F.2d 993, 1000–01 (7th Cir. 1980)).

But even when examined in the light most favorable to Plaintiff, he has not alleged any facts that, if taken as true, could show that former Sheriff Clarke personally participated in allegedly prohibiting Plaintiff from a fair trial, from due process, or otherwise personally took action to frustrate Plaintiff's constitutional rights. Therefore, dismissal of Counts 1 and 2 against former Sheriff Clarke is appropriate.

> ii. **Plaintiff improperly named former Sheriff Clarke relating to Count 4.**

If this Court believes Plaintiff properly stated a *Monell* claim for relief, former Sheriff Clarke is not the proper party and this Court should dismiss the claim against Clarke. Pursuant to Federal Rule of Civil Procedure 25(d),

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

Plaintiff's *Monell* claim appears to be a combination of three potential avenues for relief: (1) that former Sheriff Clarke and Milwaukee County failed to investigate Plaintiff's complaint or discipline the Deputy Defendants for the complaint; (2) that former Sheriff Clarke and Milwaukee County failed to "adequately train and supervise its sheriff's deputies working as circuit court bailiffs"; and (3) that Clarke and Milwaukee County had unconstitutional policies, practices and/or customs. (Dkt. 1, ¶¶ 129-135). Apart from the inadequacy of the pleadings, Plaintiff's claim is directed toward former Sheriff Clarke in his former official capacity, which is wholly inappropriate under Federal Rule of Civil Procedure 25(d); it should be the current Sheriff named as a defendant instead.

For these reasons, former Sheriff Clarke is not a proper party, and this Court should dismiss all claims against him.

## CONCLUSION

For the above stated reasons, this Court should grant Defendants' motion for judgment and dismiss each of Plaintiff's claims, in their entirety, with prejudice.

Dated this 3rd day of September, 2024.

By: s/ Brianna J. Meyer
SAMUEL C. HALL, JR.
State Bar No. 1045476
BRIANNA J. MEYER
State Bar No. 1098293
ZACHARY J. FLOOD
State Bar No. 1099136
BENJAMIN J. NICHOLS
State Bar No. 1138101
Attorneys for Defendants Milwaukee
County, Deputy Vu Do, Deputy Scott
Woida and David Clarke
CRIVELLO, NICHOLAS & HALL, S.C.
710 N. Plankinton Avenue, Suite 500
Milwaukee, WI 53203
Ph: (414) 271-7722
Fax: (414) 271-4438
E-mail: shall@crivellolaw.com
bmeyer@crivellolaw.com
zflood@crivellolaw.com
bnichols@crivellolaw.com